Frederick R. PREWITT, Appellee,

v.

NUMISMATIC FUNDING CORPORATION,
Appellant.

No. 84–1163.

United States Court of Appeals,
Eighth Circuit.

Submitted May 25, 1984.

Decided Oct. 5, 1984.

Rehearing Denied Oct. 29, 1984.

See also, D.C., 577 F.Supp. 760.

Appeal from the United States District Court for the Eastern District of Missouri. Hon. Edward L. Filippine, U.S.D.C., Judge.

Chused, Bini, Kohn & Feldmann, P.C., F. Terrell Eckert, Jr., Bruce Talen, St. Louis, Mo., for appellant.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Harry B. Wilson, Jr., Rodney W. Sippel, St. Louis, Mo., for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Frederick R. Prewitt brought this declaratory judgment action against the Numismatic Funding Corporation (Numismatic) seeking a determination that the risk of loss of valuable coins sent by Numismatic to Prewitt and returned by him via mail remained with Numismatic notwithstanding that the coins were underinsured in the return mailing. Numismatic counterclaimed for the value of the coins. The district court granted Prewitt declaratory relief and rejected the counterclaim. Numismatic appeals the adverse judgment. Federal jurisdiction rests on diversity of citizenship, 28 U.S.C. § 1332. After reviewing the record, we affirm.

## I. BACKGROUND.

Numismatic, a corporation with its principal place of business in New York, sells rare and collector coins by mail throughout the United States. Prewitt, a commodities broker in St. Louis, Missouri, responded to Numismatic's advertisement in a December 1981 issue of the Wall Street Journal offering six Morgan silver dollars. Shortly thereafter, a sales representative called Prewitt, and Prewitt agreed to receive several coins on an "approval basis" from Numismatic. Two weeks later, Prewitt received in the mail fifteen Morgan silver dollars with a value in excess of $3400. The literature enclosed with the coins stated:

"Everything is available to you on a 14 day approval basis." The invoice stated that title did not pass until the buyer paid the account in full and that the buyer had fourteen days from the date of receipt in which to settle the account. The literature gave no directions on how to return unwanted coins.

Prewitt immediately returned the coins via Federal Express and enclosed a letter expressing his disapproval of the shipment of unsolicited coins. When Numismatic contacted him again, however, he agreed to review several additional coins on an approval basis. The second shipment, containing fifty-two coins valued in excess of $20,000, was sent on the same terms as the first. Prewitt selected seven coins and returned the remaining coins via either the United States Postal Service or Federal Express.

On February 3, 1982, Prewitt received another telephone call from an agent of Numismatic. During the conversation, Prewitt expressed his disapproval of the corporation's sales tactics and stated that he wished to do no further business with Numismatic. The record discloses conflicting testimony regarding whether Prewitt agreed to a third shipment of gold and silver coins. In any event, on February 10, 1982, Numismatic mailed Prewitt twenty-eight gold and silver coins in two packages with an invoice value of $61,975. As with the earlier shipments, the coins were sent on a fourteen day risk-free basis with no instructions as to the method of returning unwanted coins. Upon receiving the coins, Prewitt instructed his wife to return them via certified mail for the maximum amount of insurance available—$400 for each package. She mailed the coins on February 23, 1982, but Numismatic never received them. Thereafter, Prewitt brought this action seeking a declaration of his nonliability for the loss in mailing.

## II. DISCUSSION.

In awarding Prewitt a declaratory judgment of nonliability, the district court determined, and the parties do not dispute, that the delivery of coins between seller Numismatic and buyer Prewitt constituted a sale "on approval." Under the provisions of the Uniform Commercial Code relating to risk of loss, as adopted in Missouri,[1] the court held that the risk of loss remained with the seller.

### A. Course of Dealing and Course of Performance Arguments.

Appellant Numismatic advances two theories in which it contends that the parties impliedly agreed to shift the risk of loss to Prewitt. First, it argues that an agreement by Prewitt to assume the risk of loss arose by implication from the prior course of dealings between the parties in which Prewitt had returned coins fully insured via Federal Express.

Under the parol evidence rule as adopted in Missouri, a written agreement "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing * * *." Mo.Rev.Stat. § 400.2–202(a) (1969). The code defines "course of dealing" as "a sequence of previous conduct between the parties to a particular transac-

---

**1.** Mo.Rev.Stat. § 400.2–326(1)(a) (1969) provides in pertinent part:

    (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

    (a) a **"sale on approval"** if the goods are delivered primarily for use * * *.

Section 400.2–327(1) (1969) provides:

    (1) Under a sale on approval unless otherwise agreed

    (a) although the goods are identified to the contract the risk of loss and the title do not pass to the buyer until acceptance; and

    (b) use of the goods consistent with the purpose of trial is not acceptance but failure seasonably to notify the seller of election to return the goods is acceptance, and if the goods conform to the contract acceptance of any part is acceptance of the whole; and

    (c) after due notification of election to return, the return is at the seller's risk and expense but a merchant buyer must follow any reasonable instructions.

**1178**

tion which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Mo.Rev.Stat. § 400.1–205(1) (1969). A court should look to course of dealing to supplement or qualify the terms of an agreement where the parties are or should be aware of that course of dealing. Mo.Rev.Stat. § 400.1–205(3) (1969).

■ The district court did not consider whether the parties, through their course of dealing, had impliedly agreed upon a specific method of return of the coins. It did, nevertheless, find that Numismatic did ship the coins to Prewitt through the United States Postal Service and that "no instructions on the method of return" were ever given by Numismatic. In light of this finding, and the absence of any specific evidence in the record indicating that the parties had agreed on a method of return, we reject Numismatic's contention that there was an understanding between the parties that Prewitt would return the coins by Federal Express. Indeed, while the record establishes that Prewitt returned the first shipment of coins via Federal Express, Prewitt testified that he could not remember what method of service he used to return the second shipment. No instructions were provided prescribing a method of return on any of the shipments. Thus, we conclude that the evidence is insufficient to show "a sequence of previous conduct" establishing a course of dealing between the parties.

■ Numismatic's second contention is that an agreement to shift the risk of loss from the seller to the buyer may be implied from Prewitt's conduct in obtaining some, albeit inadequate, insurance on the packages in question. Under the Missouri parol evidence rule, Mo.Rev.Stat. § 400.2–202(a) (1969), course of performance may also be used to explain or supplement the terms of a written agreement. Course of performance is defined, and its applicability prescribed in section 400.2–208(1):

(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

Mo.Rev.Stat. § 400.2–208(1) (1969).

There is simply no basis upon which we can identify any course of performance in this case. It is undisputed that Prewitt purchased insurance on and returned the coins all in one large shipment. The official comments to section 400.2–208 note that the section has no application to cases involving only a single occasion of conduct. Mo.Rev.Stat. § 400.2–208 comment 4 (1969). Thus, we reject Numismatic's argument that an implied agreement to shift the risk of loss to Prewitt arose through course of performance.

**B. Seasonable Notification.**

Numismatic also contends that the buyer assumed the risk of loss under the "sale on approval" provisions of the Uniform Commercial Code because he did not seasonably notify the seller of his election to return the goods and did not seasonably return the goods. See Mo.Rev.Stat. § 400.2–327(1)(b)–(c) (1969). This contention rests upon the record disclosing that while Prewitt placed the packages for return in the mails within fourteen days, he did not notify Numismatic otherwise of his rejection of the coins. Numismatic argues that, considering the high value of the coins (more than $60,000), Prewitt should have rejected them sooner. Keeping this merchandise for fourteen days, according to Numismatic, amounted to an acceptance by the buyer.

■ The district court rejected Numismatic's contention because the sale on approval contract gave Prewitt fourteen days to decide whether to accept or reject the coins. Numismatic does not dispute that Prewitt placed the coins in the mail for return within the fourteen day period. Under Missouri law, an action is taken seasonably if taken within the agreed time. Mo.

Rev.Stat. § 400.1–204(3) (1969). The court also rejected Numismatic's defense based upon lack of notice of rejection because the return of the coins by mail constituted seasonable notice that Prewitt would not accept the proffered sale and that procedure accorded with the past conduct of the parties as an acceptable method of notification of rejection.

In our view of the record, we find no error in the district court's findings of fact and its conclusions of law logically follow from those findings. In sum, Numismatic failed to produce evidence sufficient to establish any basis upon which the district court could have found that the risk of loss shifted to the buyer in a "sale on approval" transaction. Accordingly, we affirm.